UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| 3M Company, | Civil No. 08-827 (JNE/SRN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Darlet-Marchante-Technologie SA, | |
| Defendant. | |

---

Larry D. Espel, Esq., Greene Espel, PLLP, 200 South 6th Street, Suite 1200, Minneapolis, MN 55402-1415, for Plaintiff.

Phillip R. Krass, Esq., Krass Monroe, PA, 8000 Norman Center Drive, Suite 1000, Minneapolis, MN 55437-1178, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This case is before the Court on Defendant's Motion to Dismiss [Doc. No. 21]. This matter was referred to the undersigned by an Order of Reference entered by the District Court on February 4, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b). For the reasons set forth below, the Court recommends that the motion to dismiss be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, a Delaware Corporation with its principal place of business in Minnesota, filed the Complaint in this case on March 21, 2008 [Doc. No. 1]. Defendant is a foreign corporation, incorporated in France, with its principal place of business in Le Bourget Du Lac, France. The Complaint alleges claims against Defendant for breach of warranty and breach of contract.

Prior to filing the Complaint, Plaintiff alleges it attempted to discuss the issues regarding the contract with Defendant's United States General Manager, Carlos Estevez, who was Defendant's contact person for the contract underlying the case.  Plaintiff contends that on April 9, 2008, it delivered a letter containing a copy of the Complaint to Mr. Estevez in Lansdowne, Virginia but addressed to Defendant's French address.  The parties dispute whether Dr. Wolfgang Pinegger, Defendant's CEO, actually received a copy of the Complaint at that time or at any time prior to Plaintiff filing an application for entry of default judgment in November 2008.  Because Dr. Pinegger discussed the lawsuit with Douglas Fladeboe, a representative of 3M, Plaintiff asserts that Defendant had actual knowledge of the lawsuit.  Defendant contends that Dr. Pinegger is its "official legal representative."

Plaintiff asked Defendant to waive or accept service in mid-April and on April 24, 2008, Mr. Estevez advised Mr. Fladeboe that Defendant had retained German lawyer Dr. Dietmar Hantke as counsel.  3M in-house lawyers spoke to Dr. Hantke in early May and explained that 3M was interested in meeting with representatives from Defendant.  The parties participated in such a meeting on June 3, 2008, at 3M's St. Paul headquarters.  According to Plaintiff, Defendant advised Plaintiff at this meeting that it would not sign a tolling agreement.  The parties then exchanged communications about the possibility of a tolling agreement throughout June and July.

Because 120 days had passed since the date Plaintiff filed the Complaint, on July 25, 2008, this Court ordered Plaintiff to:

> (1) Notify defense counsel immediately that he/she is required to make an appearance or move for an extension of time to do so; (2) File an application for entry of default unless the required pleading is filed within 10 days; or (3) Advise the Court in writing of any good cause to the contrary.

2

[Doc. No. 5]. The Order also provided, "[u]nless plaintiff's counsel complies with this order within 20 days of this date, this case will be dismissed for lack of prosecution."

Plaintiff complied with the Order and on August 4, 2008 advised the Court that the parties were engaging in continued settlement discussions, Defendant had not agreed to waive or to accept service, and Plaintiff had initiated the process to serve Defendant in France pursuant to the Hague Convention [Doc. No. 6]. Plaintiff also informed the Court that serving a party in a foreign country under the Hague Convention was a time-consuming process. On August 5, 2008, Plaintiff contends it again advised Defendant of the Court's July 25, 2008 Order and told Defendant it was still taking steps under the Hague Convention to complete formal service of process.

Dr. Pinegger was in the United States during the week of September 15, 2008, and agreed to meet with Plaintiff. Once again the parties met at 3M's St. Paul headquarters and discussed settlement and Plaintiff contends it re-advised Defendant it was pursuing service of the Complaint in France. The parties dispute whether Dr. Pinegger requested a copy of the Complaint from Plaintiff at this meeting.

To serve Defendant in France pursuant to the Hague Convention, Plaintiff engaged ABC Legal Services, Inc. ("ABC"). It is unclear, in the record, when Plaintiff first contacted ABC to serve Defendant in France.

ABC certified that service was completed on October 27, 2008. (See Exhibit A attached to the Affidavit of Larry Espel dated November 25, 2008, Doc. No. 8). Attached to the proof of service is a document in both English and French called "Preliminary Investigation Report of Witness Hearing Judicial Intelligence." The document is signed by a French judicial police officer and Isabelle Delaunay, a human resources manager for Defendant. The statement

provides that the judicial police attempted to serve Ms. Delaunay with the Complaint in this matter on October 27, 2008. Ms. Delaunay refused to accept service on that date, stating she did not have authority to accept service and the only person with the authority to accept service for Defendant was Dr. Pinegger, a resident of Austria. Ms. Delaunay also informed the judicial police that Defendant "did not have any executive or representative" on Defendant's premises in France. At the hearing, Defendant conceded that it does not have anyone authorized to accept service in France, despite the fact that Defendant is a French corporation doing business in France. Defendant contends, however, that Ms. Delaunay offered to bring Dr. Pinegger to the judicial police officers to receive the file, but the French police did not follow-up on that request.

On November 17, 2008, Plaintiff's counsel received a copy of the proof of service from ABC, indicating service had been completed on Defendant on October 27, 2008. Defendant did not answer the Complaint after the alleged October service. Therefore, Plaintiff filed an application for default judgment on November 25, 2008, based on this Court's July 25, 2008 Order [Doc. No. 7]. Plaintiff emailed the default motion to Dr. Pinegger and sent a copy of the motion to Defendant in France by registered mail. In response, Dr. Pinegger called 3M and emailed Plaintiff's counsel contesting that service had not properly occurred. Because of this communication, Plaintiff withdrew its request for entry of default [Doc. No. 10].

Defendant's current counsel filed an appearance in this matter on December 10, 2008 [Doc. No. 12]. On December 16, 2008, Defendant filed the instant motion challenging the sufficiency of Plaintiff's service of process [Doc. No. 21].

## II.  STANDARD OF REVIEW

Defendant asserts that this case must be dismissed for insufficient service of process under Fed. R. Civ. P. 4(m). The proper vehicle for challenging and reviewing the timeliness of service under Fed. R. Civ. P. 4(m) is through Fed. R. Civ. P. 12(b)(4) or 12(b)(5). See e.g. Anderson v. Osh Kosh B'Gosh, No. 05-13921, 255 Fed. Appx. 345, 347, 2006 WL 940660, *2 (11th Cir. April 12, 2006); Diamond v. Potter, No. 08-2229, 2009 WL 650239, *1 (N.D. Ohio March 11, 2009); Martinez-Jones v. Dulce Independent Schools, No. 07-0703, 2008 WL 2229457, *7 (D.N.M. March 14, 2008); Henry v. Cooper University Hosp., No. 07-2402, 2008 WL 4371764, *1 (D.N.J. Sept. 17, 2008)

In addressing a motion to dismiss based on Rule 12(b)(4) or 12(b)(5), a court necessarily must review affidavits outside the pleadings. Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1353 (3 Ed. 2004); Personalized Brokerage Services, LLC v. Lucius, No. 05-1663, 2006 WL 2975308, *1 (D. Minn. Oct. 16, 2006); Devin v. Schwan's Home Services, Inc., No. 04-4555, 2005 WL 1323919, *2 (Report & Recommendation, D. Minn. May 20, 2005). Reviewing such affidavits does not revert the motion to a motion for summary judgment. Id.; Fed. R. Civ. P. 12(b).

Proper service is essential for a court to exercise jurisdiction over a party. Murphy Bros., Inc. v. Michetti Pipe Stringing, 526 U.S. 344, 350 (1999); Printed Media Serv., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993). Before resolving any matter on the merits, questions pertaining to the court's jurisdiction must be resolved. Crawford v. F. Hoffman-LaRoche, Ltd., 267 F.3d 760, 764 (8th Cir. 2001). On a motion to dismiss brought under Fed. R. Civ. P. 12(b)(4), insufficiency of process, or 12(b)(5), insufficiency of service of process, the plaintiff must establish prima facie evidence that there was sufficient process and service of

5

process. Northrup King Co. v. Compania Productora Semillas Algodoneras, 51 F.3d 1383, 1387 (8th Cir. 1995).

**III.   DISCUSSION**

Defendant contends that it was not properly served on October 27, 2008, and even if it was served properly on that date, the service was untimely because it was more than 120 days after the Complaint was filed.  In response, Plaintiff contends it was not required to serve Defendant within 120 days of filing the Complaint because Defendant is a foreign corporation, Defendant had actual notice of the lawsuit within the 120 days, and service of process was effective on October 27, 2008.

   **A.   Whether Service is Timely Under Rule 4(m)**

A party commences a federal action by filing a complaint with the district court.  Fed. R. Civ. P. 3.  The issue in this case involves the application of Fed. R. Civ. P. 4(m) and the time-limits for effectuating service of a complaint.  The Rule provides:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).

While the plain language of the Rule provides that the 120-day time limit to complete service does not apply to service in a foreign country, Defendant nevertheless contends that service was untimely in this case.  Defendant relies on a number of cases arising in the Second Circuit which held that the 120-day rule for foreign service only applies when the Plaintiff has at least *attempted* service in the foreign country within the initial 120-day period.  Montalbano v.

6

Easco Hand Tools, Inc., 766 F.2d 737 (2d Cir. 1985); D. Klein & Son, Inc. v. Good Decision, Inc., 1999 WL 349932, *1 (S.D.N.Y. 1999); see also Russo Securities, Inc. v. Ryckman, 159 Fed. Appx. 294, 295, 2005 WL 3453819, *1 (2d Cir. 2005) (citing Montalbano); O'Keefe v. St. Lawrence & Atlantic R. Co., 167 F.R.D. 30, 32 (D. Vt. 1996) (stating 120 period can be extended for service in a foreign country where a good faith attempt at service was made within the 120-day period).

There appears to be a split among the circuits on this issue. The Second Circuit and district courts within the Second Circuit appear to be the only courts to hold that if a plaintiff does not make an attempt at service within the foreign country within the initial 120-day period, the case should be dismissed. On the other end of the spectrum, some courts follow the blanket rule that the 120-day time limit of rule 4(m) simply does not apply to service in a foreign country. Lucas v. Natoli, 936 F.2d 432, 432-33 (9th Cir. 1991) (stating "[w]e find the controlling language of Rule [4(m)] so clear that it allows no latitude for interpretation"); Turpin v. Mori Seiki Co., Ltd., 56 F. Supp. 2d 121, 129 (D. Mass. 1999) (holding 120-day rule does not apply to foreign services of process); In re S1 Corp. Sec. Litig., 173 F. Supp. 2d 1334, 1343 (N.D. Ga. 2001) (holding service on foreign defendant need not have been perfected or attempted within the 120-day period).

A majority of courts, however, instead look to the totality of the circumstances to determine if the plaintiff acted reasonably and diligently in effectuating service. Nylok Corp. v. Fastener World, Inc., 396 F.3d 805 (7th Cir. 2005) (noting 120 rule does not apply because timeliness of foreign service is often "out of a plaintiff's control" but holding time available to serve foreign defendant is not unlimited and plaintiff must begin making efforts to attempt service); Ballard v. Tyco Intern., Ltd., No. 04-CV-1336, 2005 WL 1863492, *5 (D.N.H. Aug. 4,

2005) (denying motion to dismiss when plaintiff attempted to serve foreign defendant, defendant had actual notice of lawsuit, and defendant was not prejudiced by improper service); <u>PA Orthopedic Ass'n v. Mercedes-Benz A.G.</u>, 160 F.R.D. 58, 61 (E.D. Pa. 1995) (refusing to dismiss complaint where proper service not completed in 120 days, but "encourag[ing] Plaintiffs to make a good faith effort at service"); <u>James v. Rutil (S.R.L.)</u>, No. 95-530-c, 1997 WL 151174, *5 (S.D. Ind. March 14, 1997) (applying "flexible due diligence" standard considering the reasonableness of plaintiff's effort to effectuate service, and any prejudice to the defendant from any delay); <u>In re Bulk Graphite Products Antitrust Litig.</u>, No. 02-6030, 2006 WL 1084093, *3 (D.N.J. April 24, 2006) (holding a court may dismiss a case for failure to serve foreign defendant within reasonable time under the "flexible due diligence standard"); <u>Papst Licensing GmbH and Co. KG v. Sunonwealtlh Elec. Mach. Ind. Co.</u>, Ltd., 332 F. Supp. 2d 1142, 1151 (N.D. Ill. 2004) (holding courts should apply a flexible due diligence standard to determine whether service of process was timely); <u>see also</u> Alan Wright & Arthur R. Miller, 4B Federal Practice and Procedure § 1137 (3 Ed. 2008).

It does not appear that the Eighth Circuit has squarely ruled on this issue.[1] Under these circumstances, this Court declines to adopt a strict inflexible rule that a plaintiff must attempt service within 120 days from filing a complaint. Rather, the Court concludes that a flexible rule, which considers what efforts the plaintiff has made to effectuate service and whether the defendant is prejudiced by the delayed service, is most appropriate.

It is undisputed that Plaintiff has attempted service on Defendant pursuant to the Hague Convention and has made a good faith effort to serve Defendant. Defendant's only assertion of prejudice is that, in settlement discussions, Plaintiff is using the threat of a possible default

---

[1] In dicta, one District of Minnesota case stated that service of process in a foreign country is exempt from the 120-day requirement. <u>Healthcare Compare Corp. v. Super Solutions Corp.</u>, 151 F.R.D. 114, 115 (D. Minn. 1993).

judgment if Defendant does not concede that service in this case was proper. In response, Plaintiff contends that its application for entry of default judgment was filed because of this Court's July 2008 Order and not for purposes of settlement posturing. It is undisputed that Plaintiff has now withdrawn its application. Defendant has conceded that there is no statute of limitation bar applicable to Plaintiff's claims and, if this Court were to dismiss the case without prejudice, Plaintiff could re-file the lawsuit alleging the same claims. It also appears Dr. Pinegger had actual notice of this lawsuit, even if he did not see the Complaint until after Plaintiff's application for default. Moreover, the parties had continued communications throughout the time period between when Plaintiff filed the Complaint and when it applied for entry of default judgment, including two in-person meetings. Because Plaintiff has made a good-faith effort to serve Defendant and there is no prejudice to Defendant, this Court cannot say that service in this case is untimely under Fed. R. Civ. P. 4(m).

### B. Whether Proper Service Has Occurred

Having concluded service is not untimely under Fed. R. Civ. P. 4(m), this Court must next consider whether Defendant has now been properly served. Fed. R. Civ. P. 4(h) provides that service on a foreign corporation can be completed by any means available in Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i). Fed. R. Civ. P. 4(f)(1) provides that a foreign entity can be served by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Since both the United States and France are signatories to the Hague Convention, service in France is governed by the Hague Convention. Burda Media, Inc. v. Viertel, 417 F.3d 292, 299-300 (2d Cir. 2005). Plaintiff contends that it properly served Defendant in October 2008 pursuant to the Hague Convention

and French Civil Procedure. Specifically, Plaintiff asserts that Article 656 of the French Code of Civil Procedure states that if no one may accept service, or no one is willing to receive a copy of the service of process, and if it appears that the addressee lives at the address indicated, the service will be deemed to have been made at the place of domicile or residence.

This Court concludes that it is not necessary to resolve whether the October 2008 service was effective under the Hague Convention or French law. Even when service of process is not effective, dismissal is not required. Marshall v. Warwick, 155 F.3d 1027, 1032 (8th Cir. 1998). Rather, a district court has discretion to either dismiss the action or quash the service but retain the case. Id.; (quoting Haley v. Simmons, 529 F.2d 78, 78 (8th Cir. 1976); Milsap v. U.S. Dept. of HUD, no. 4-89-635, 1990 WL 157516, *4 (D. Minn. Oct. 18, 1990). At the hearing on this motion, Defendant's counsel indicated that he had been given authority by Defendant to accept service of the Complaint in this matter. Therefore, at the hearing the Court ordered Plaintiff to serve the Complaint on Defendant's counsel. On April 6, 2009, Plaintiff filed a copy of Defendant's Waiver of Service of Summons [Doc. No. 49], making service of process effective as of that date. Proper service of process has now been accomplished and Defendant's Motion to Dismiss should be denied.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [Doc. No. 21] be **DENIED**.

Dated: April 15, 2009

                                            s/ Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 30, 2009** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.